IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Marvin Taylor, et al.,                                    Case Nos. 3:05 CV 7383
                                                                          3:06 CV 1116
                                    Plaintiffs,

                    -vs-                                    MEMORANDUM OPINION
                                                             AND ORDER_____
CSX Transportation, Inc., et al.,
                                                           JUDGE JACK ZOUHARY
                                    Defendants.


                            *   *   *


Marvin Crowl, et al.,
                                    Plaintiffs,

                    -vs-

Norfolk Southern Railway Company, et al.,

                                    Defendants.


        Pending before the Court are Plaintiffs' Motions for Class Certification (*Taylor* Doc. No. 108;

*Crowl* Doc. No. 59).  The Motions have been fully briefed, and the Court also has had the benefit of

oral argument (*Taylor* Doc. No. 254; *Crowl* Doc. No. 208).  For the reasons discussed below,

Plaintiffs' Motions are denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

        Plaintiffs filed their initial Complaint in *Taylor* on September 30, 2005 (*Taylor* Doc. No. 1),

and in *Crowl* on May 4, 2006 (*Crowl* Doc. No. 1).  Plaintiffs then filed a Second Amended Complaint

in *Taylor* on August 17, 2006 (*Taylor* Doc. No. 86).  Plaintiffs allege that, in violation of federal law,

diesel exhaust regularly enters locomotive cabs in Defendants' fleet.  Plaintiffs assert three causes of

action and primarily seek monetary damages for personal injury, although they also seek a declaratory

judgment of liability: (1) Defendants are liable in negligence under the Federal Employer's Liability

Act, 45 U.S.C. § 51 *et seq.*, (FELA);[1] (2) Defendants violated the Locomotive Inspection Act, 49

U.S.C. § 20701, et seq. (LIA);[2] and (3) Defendants violated 49 C.F.R. § 229.43(a), implemented under

LIA, which provides:

> Products of combustion shall be released entirely outside the cab and other
> compartments. Exhaust stacks shall be of sufficient height or other means provided to
> prevent entry of products of combustion into the cab or other compartments under
> usual operating conditions.

Plaintiffs request class certification on the following limited issue: all persons who worked

for Defendant railroads within the class period as engineers and conductors and who, at any time,

have been diagnosed with asthma, COPD, or emphysema by a medical doctor. The class period is

defined from September 30, 2002 forward for *Taylor* and from May 4, 2003 forward for *Crowl*.

Defendants oppose class certification, arguing Plaintiffs fail to meet the requirements of Federal Civil

Rule 23.

**ANALYSIS**

**1.      Class Definition**

In reviewing a motion for class certification, the Court must first identify the purported "class"

and determine that the named plaintiffs are members of the class. The class definition must specify

"a particular group at a particular time frame and location who were harmed in a particular way" and

define the class so that its membership can be objectively ascertained. *Edwards v. McCormick*, 196

F.R.D. 487, 491 (S.D. Ohio 2000).

---

[1]

Plaintiffs assert a traditional negligence claim under FELA and also allege that the release of diesel exhaust
into the locomotive is negligence *per se* under FELA.

[2]

LIA can be violated in two ways: (1) failure to comply with Federal Railway Regulations (such as 49 C.F.R.
§ 229.43(a)); or (2) failure to keep the locomotive in safe working condition.

As stated above, the proposed class definition includes all engineers and conductors, working for Defendant railroads within the respective class periods, who have been diagnosed with asthma, COPD or emphysema by a medical doctor.  The Court finds membership in this class can be objectively determined.  The Court also finds Marvin Taylor, Walter Weidner, Thomas Scanlon and Willie Camp have been diagnosed with asthma, COPD or emphysema and have worked for a *Taylor* Defendant since September 30, 2002.  Finally, the Court finds Marvin Crowl has been diagnosed with asthma and worked for a *Crowl* Defendant since May 4, 2003.  Therefore, a clearly defined class exists, of which the named Plaintiffs are members.

### 2. Rule 23 Generally

After a class has been identified, Plaintiffs must establish that the requirements of Rule 23(a) are met.  Rule 23(a) lists four requirements for the certification of a class. The proposed class representative bears the burden to establish that each of these four requirements are satisfied with respect to the proposed class.  *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003); *Kutschbach v. Davies*, 885 F. Supp. 1079, 1083 (S.D. Ohio 1995).  The requirements are as follows:

1. Numerosity: the members of the class must be so numerous that joinder of all members is impracticable;

2. Commonality: questions of law or fact must be common to the entire class;

3. Typicality: the claims or defenses of the named representative must be typical of the claims or defenses of the class; and

4. Adequacy: the named representative must fairly and adequately represent the interests of the class as a whole.

In addition to showing that each of the four requirements of Rule 23(a) is satisfied, Plaintiffs must also demonstrate the class certification is appropriate under one of the subcategories of Rule 23(b).[3] *Id*. at 1083-84.

The Court is required to conduct a "rigorous analysis" into whether the requirements of Rule 23 are met before certifying a class. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The Court has broad discretion in deciding whether to certify a class, but this discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977) ("district court has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of Rule 23 correctly"). The Court cannot find an action is maintainable as a class action merely because it is designated as such in the pleadings. Rather, "[t]here must be an adequate

---

[3]

Rule 23(b) states in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> > (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> >
> > > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> > >
> > > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> >
> > (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> >
> > (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974).

While the Court does not examine the merits of the claims, "it may be necessary for the court to probe behind the pleadings . . . ." *Falcon*, 457 U.S. at 160.  The Court "must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of the plaintiffs' proofs are principally *individual* in nature or are susceptible of *common proof* equally applicable to all class members." *Little Caesar Enters. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997) (emphasis in original).

### 3.    Rule 23(a) Prerequisites

The Court first turns to the requirements of Rule 23(a), which are:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Court finds Plaintiffs have shown numerosity, typicality, commonality and adequacy and therefore have satisfied Rule 23(a).

#### *Numerosity*

The language of Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  However, impracticable does not mean impossible. Instead, a showing that "plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required" is sufficient.  *Mann v. Acclaim Fin. Servs.*, 232 F.R.D. 278, 283 (S.D. Ohio 2003).  The numerosity requirement for class certification requires an examination of the specific facts of each case and imposes no absolute limitations.  *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005).  The Sixth Circuit has previously explained "there is no strict numerical test for determining

impracticability of joinder." *Id*.  In *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006), the Sixth Circuit also recognized that although no firm numerical test exists, "substantial" numbers are usually enough to satisfy the numerosity requirement, and "it is generally accepted that a class of 40 or more members is sufficient to establish numerosity." *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003); *see also Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2004), *aff'd*, 383 F.3d 495 (6th Cir. 2004) ("[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."); *Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 570 (N.D. Ohio 2003) ("Plaintiffs must present more than speculation, but plaintiffs do not have to 'establish class size with precision.'").

However, while the exact number of class members need not be pled or proved, impracticability of joinder must be positively shown and cannot be speculative. *Golden*, 404 F.3d at 966. *See also McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001). In its analysis, the Court must also consider factors of "judicial economy, geographical dispersion of class members, and the financial resources of class members." *Cervantes v. Sugar Creek Packing Co.*, 210 F.R.D. 611, 621 (S.D. Ohio 2002).

Here, Plaintiffs proffer an affidavit confirming that more than forty railroaders meet the class definition (Doc. No. 154, Ex. A). The geographic dispersion of the potential plaintiffs across the country, and the cost of individually litigating these claims, support a finding of numerosity.

### *Commonality*

In order to certify a class, Plaintiffs must demonstrate there are questions of law or fact common to the class.  Federal Civil Rule 23(a)(2). The Sixth Circuit explained the commonality requirement in *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998):

The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. *American Med. Sys.*, 75 F.3d at 1080. It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

Although there may be a common issue of law or fact that will advance the litigation, the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

Plaintiffs assert there are three common questions of fact: (1) whether Defendants' fleet regularly exposes persons inside the cab to diesel exhaust; (2) whether the class members rotate through the fleet; and (3) whether inhalation of diesel exhaust harms the human body (Pls' Reply pp. 9-10).

The first question of fact is common to all class members because they all worked in the same fleet of locomotives and, under Plaintiffs' theory, regular exposure in the fleet would prove regular exposure to all class members.  When the allegedly defective item is identical, courts have found commonality. *See Daffin*, 458 F.3d at 552 (holding that whether the throttle body was defective is a common question to all class members when all the vehicles had the same throttle body and warranty); *In re Telectronics Pacing Sys.*, 168 F.R.D. 203, 213 (S.D. Ohio 1996) (holding there is commonality when class members used two "virtually identical" pacemaker models); *cf. In re Am. Med. Sys.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (holding there is no commonality when class members received ten different penile implants).  Here, while each locomotive may be different, it is the fleet which is at issue, and the fleet is identical for the respective *Taylor* and *Crowl* railroaders.

7

Similarly, the facts necessary to prove whether engineers and conductors regularly rotate throughout the Defendants' fleet, and whether inhalation of diesel exhaust is generally harmful, are identical for each potential class member.  These questions of fact are common and would clearly advance the case under Plaintiffs' legal theory.  Furthermore, the case contains common questions of law.  A cornerstone of Plaintiffs' legal theory is whether releasing diesel exhaust in the cab is negligence *per se*, and the resolution of this common question would significantly advance the litigation for all class members.

While there are questions of law and fact not common to all class members, even one common question is sufficient to satisfy the commonality requirement, despite the existence of individual questions.  *See Sprague*, 133 F.3d at 397; *Sterling*, 855 F.2d at 1197.  The remaining individual questions are more appropriately discussed in the Court's Rule 23(b) analysis.  Based on the narrow issues of fact and law presented, the Court finds the commonality requirement is met.

### *Typicality*

In addition to the commonality requirement, Rule 23(a)(3) requires that a class be certified only where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Federal Civil Rule 23(a)(3). As noted by the Supreme Court in *Falcon*, 457 U.S. at 158 n.13:

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

In the typicality analysis, the Court decides whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class.  *Sprague*, 133 F.3d at 399.  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go

8

the claims of the class." *Id.* at 399. Where the substantive claims depend on individual permutations, however, the claims of the named plaintiffs who have the same general complaint against defendants as the class are not typical. *Id.*

As explained by the Sixth Circuit in *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572 (6th Cir. 2004):

> The typicality requirement is designed "to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co.*, 446 U.S. at 330. In order to meet the typicality requirement, the plaintiffs must show that their "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *In re Am. Med.*, 75 F.3d at 1082.

Therefore, typicality focuses on the "similarities between the named plaintiffs' claims and those of the class as a whole." *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 299 (N.D. Ohio 2001). This does not require that the claims be identical, but there must be some common question of fact or law. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 672 (N.D. Ohio 1995). As clearly explained in *Jones*, "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Jones*, 203 F.R.D. at 299.

In *Jones*, plaintiffs sued for personal injury and property damage allegedly suffered from the application of carpet powder and spray to plaintiffs' carpeting and furniture. Plaintiffs were a target group of consumers with asthma and allergies. The *Jones* court held that plaintiffs failed the typicality requirement *(id.* at 300):

> Each plaintiff must individually prove that he or she experienced personal injuries and/or property damage which was proximately caused by the use of defendant's products. The named plaintiffs' claims are typical only if what is needed to prove them is the same as what is needed to prove the claims of the proposed class.

Here, Defendants contend Plaintiffs fail to meet the typicality requirement because Plaintiffs' claims of personal injury focus on individual facts in terms of the evidence necessary to prove injury and specific causation, such as Plaintiffs' work and health histories which are not typical of the class.

Plaintiffs counter their claims are the same for all class members who share a common wrong (diesel exhaust exposure while in the cab), a common legal theory (any presence of diesel exhaust in the cab is a violation of the law), and a common injury (the harm caused by diesel exhaust), and therefore satisfy the typicality requirement.

In order to meet the typicality requirement, Plaintiffs must show their "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Bacon*, 370 F.3d at 572.  Plaintiffs argue they were regularly exposed to diesel exhaust in their workplaces, which they claim is negligence *per se* under FELA.  They also argue that any amount of exposure to diesel fumes causes harm, making the fact of harm common to all Plaintiffs.  Plaintiffs would reserve the questions regarding the extent of harm until the damages portion of the trial.

Defendants counter that even if class certification was limited to the three questions (see page 7 *infra*), the claims are not typical, because they are based on Plaintiffs' **regular** exposure to diesel fumes in cabs, not **always** exposure to diesel fumes in cabs.  Looking solely at the questions to be presented by the purported class as a whole, the Court finds the three questions typical of the entire class.  Recognizing Defendants' argument that Plaintiffs will attempt to show individuals in the cabs are regularly exposed, although not always exposed, to diesel exhaust, the Court also recognizes that Plaintiffs claim they will establish a common exposure to the exhaust occurring continuously and persistently.  Assuming Plaintiffs can establish this fact to the jury's satisfaction, such a claim by its nature is typical of all purported class members.  Plaintiffs are not attempting to show Crowl and

10

Taylor were regularly exposed to diesel exhaust, but instead attempt to show **all** Plaintiffs were regularly exposed to diesel exhaust by the nature of the cabs and their rotation.

All parties acknowledge the issues remaining after the three questions are answered are highly individualistic, including issues of the extent of harm and causation, but Plaintiffs specifically excluded these issues from class definition.  As the Court explained in its commonality analysis, the effect of the remaining issues is more appropriately considered in the Rule 23(b) analysis.  On the three questions presented for class certification, the Court finds the claims and defenses available to the named Plaintiffs are the same claims and defenses available to all class members.  Accordingly, the Court finds the typicality prerequisite is met.

### *Adequacy of Representation*

Federal Civil Rule 23(a)(4) allows certification only if "the representative will fairly and adequately protect the interests of the class."  This prerequisite is vital to due process, because a final judgment in a class action is binding on all class members.  *Hansberry v. Lee*, 311 U.S. 32 (1940). In *Senter v. GMC*, 532 F.2d 511, 524-25 (6th Cir. 1976), the Sixth Circuit adopted a two-pronged test for determining the adequacy of potential class representatives:

> There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.

This adequacy requirement overlaps with the typicality requirement because, in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members.  *In re Am. Med. Sys.*, 75 F.3d at 1083.  According to *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000):

11

Under Rule 23(a)(4), a plaintiff seeking to represent the class must demonstrate that he or she will fairly and adequately represent and protect the interests of the class. *See In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another. *See id.* Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to "vigorously prosecute the interests of the class." *Id.*

The adequacy requirement applies both to Plaintiffs and their counsel. *Senter*, 532 F.2d at 525 (representatives must have common interests with purported class members and must prosecute those interests through qualified counsel). "A plaintiff can show that it fairly and adequately represents the interests of the class, pursuant to Rule 23(a)(4), if it appears that (1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation." *Ohio Public Employees Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2005).

Defendants believe the adequacy requirement has not been met. First, Defendants argue the class members' claims are not typical of the claims of the representatives. However, this argument is unsuccessful, as the requirement for typicality has been satisfied. Secondly, Defendants claim the merits of the representatives' cases are weak, and Defendants may have individual defenses to certain named Plaintiffs. This argument fails as well. As long as not all named representatives are barred by these defenses, then they are irrelevant. *Jerry Enterprises of Gloucester County, Inc. v. Allied Beverage Group L.L.C.*, 178 F.R.D. 437, 443 (D.N.J. 1998) ("Plaintiffs have shown that there is at least one named Plaintiff who will fairly and adequately represent the class. This is sufficient and the Court need not evaluate whether the other named Plaintiffs will fairly and adequately represent the class."). The Record does not reflect defenses barring all named representatives. Therefore, the Court finds Plaintiffs would adequately and fairly represent the class.

In addition, Defendants challenge Plaintiff Crowl's adequacy as a representative.  Defendants insist Plaintiff Crowl has antagonistic and conflicting claims and is unfamiliar with this lawsuit.  Yet, the Court has already acknowledged that the named Plaintiffs and members of the class share common claims.  Moreover, Plaintiff is not required to have a detailed and scholarly understanding of the case. As the court in *Murray v. E*Trade Financial Corp.*, 240 F.R.D. 392, 398 (N.D.Ill. 2006) (citing *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391-92 (N.D.Ill. 2006)) explained:

> The adequacy requirement places only a "modest" burden on a class representative to demonstrate "[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery."

The Court finds Plaintiff Crowl has sufficient general knowledge, willingness and ability to participate in the case, and thus is an adequate representative.

Finally, Defendants contest the adequacy of Plaintiffs' counsel.  The Court finds Plaintiffs' counsel are sufficiently experienced in FELA litigation and class litigation.  As to Defendants' argument that counsel has potential conflicts with other claimants, the Court disagrees, and finds no direct adversity or substantial risk of a material limitation on counsel's ability to carry out an appropriate course of action. Thus, the named Plaintiffs and their counsel are adequate representatives of the proposed class.

Plaintiffs have established numerosity, commonality, typicality and adequacy, thereby satisfying the requirements of Rule 23(a); the Court now turns to the requirements of Rule 23(b).

### 4.       Certification Pursuant to Rule 23(b)

Plaintiffs advance arguments for class certification under Rule 23(b)(1), 23(b)(2), and 23(b)(3).  The Court will address each argument separately.

### *Rule 23(b)(1) Requirements*

In order to certify a class under Federal Civil Rule 23(b)(1)(A), Plaintiffs are required to show:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class

Plaintiffs seek declaratory relief on the duties and obligations of Defendant railroads to protect railroad employees from diesel exhaust, claiming inconsistent adjudications on this issue would result in incompatible standards, particularly regarding the type and extent of any corrective or preventive relief (Pls' Reply p. 21).[4]  Plaintiffs desire a single adjudication on the interpretation of 49 C.F.R. § 229.43(a)[5] creating one uniform standard for Defendants to follow. Otherwise, Plaintiffs contend, the ability of other potential plaintiffs to protect their interests would be impaired or impeded.

The Court finds Plaintiffs' proposed declaratory judgment is basically a request for a statement of liability.[6]  Plaintiffs do not seek an injunction or any order requiring Defendants to act or refrain from acting in a certain way.  Rather, Plaintiffs request a statement of the rights and legal relationships between the parties.  Different outcomes in individual actions may result in inconsistent adjudications

---

[4]

Defendants dispute the FELA provides for declaratory relief in these circumstances (*Taylor* Doc. No. 245, *Crowl* Doc. No. 208, Hearing Trans. p. 64).  As the Court finds neither Rule 23(b)(1) nor (b)(2) applies, the Court need not address this issue.

[5]

49 C.F.R. § 229.43(a) Products of combustion shall be released entirely outside the cab and other compartments. Exhaust stacks shall be of sufficient height or other means provided to prevent entry of products of combustion into the cab or other compartments under usual operating conditions.

[6]

 "Declaratory Judgment, pursuant to Rule 23(b)(2) . . . declaring that the acts and practices set forth above are a breach of defendants [sic] obligation to plaintiffs for one or more of the reasons set forth in this Complaint, and for an Order requiring defendants to pay all attorneys fees and accountant or auditing fees incurred in this matter, and to pay all other damages and losses sustained by plaintiffs, for which plaintiffs are entitled to judgment under law" (*Taylor* Second Am. Compl. ¶ 23).

14

but they would not create incompatible standards of **conduct** as required by Rule 23(b)(1)(A).
Nothing in the relief sought by Plaintiffs would require Defendants to alter or change their current
conduct through corrective or preventive relief.  This case is, at its essence, a suit for damages, despite
the request for a declaratory judgment, because the Court cannot discern what obligations such a
declaration would impose upon Defendants that a judgment for damages would not. *See McDonnell-
Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975)

　　　　Suits for damages are typically not appropriate for certification under Rule 23(b)(1)(A) despite
a common question of law which may result in different adjudications.  "[S]ubdivision (b)(1)(A) was
not intended to permit class actions simply when separate actions would raise the same question of
law. To hold otherwise would be to render superfluous the detailed provisions of subdivision (b)(3)."
*McDonnell-Douglas*, 523 F.2d at 1086.  Nor was Rule 23(b)(1)(A) intended to apply "where the
'inconsistent result' is merely that some class members will receive damages while others will not."
*Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 282 (N.D. Ohio 2006); *McDonnell-Douglas*, 523
F.2d at 1086 ("In this case, a judgment that defendants were liable to one plaintiff would not require
action inconsistent with a judgment that they were not liable to another plaintiff. By paying the first
judgment, defendants could act consistently with both judgments."); *In re Dennis Greenman Sec.
Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987).

　　　　Additionally, while the Court recognizes Plaintiffs' concerns that multiple statutory
interpretations may result from individual adjudications, any inconsistent theories of law applied by
trial courts in diesel exhaust cases would be reviewed by appellate courts. *See In re "Agent Orange"
Prod. Liab. Litig.*, 100 F.R.D. 718, 725 (E.D.N.Y. 1983).  Furthermore, the fact that plaintiffs in other
suits may be unsuccessful is not a reason to certify under Rule 23(b)(1)(A). *See In re Bendectin
Products Liability Litigation*, 749 F.2d 300, 305 (6th Cir. 1984) ("The fact that some plaintiffs may

be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A).").  For these reasons, the Court finds class certification under Rule 23(b)(1)(A) inappropriate.

Certification under Rule 23(b)(1)(B) is also inappropriate.  This subsection states:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

. . .

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

Certifications under this subsection "are typically, although not exclusively, 'limited fund' class actions," *Dobson v. Hartford Life & Accident Ins. Co.*, No. 99CV2256, 2006 WL 861021 at *7 (D. Conn. Mar. 31, 2006).  Actions without limited funds may be granted certification when a "negative or mandatory injunction secured by one of a numerous class may disable the opposing party from performing claimed duties toward the other members of the class or materially affect his ability to do so." Rule 23(b)(1)(B) Advisory Committee's Note.

The Advisory Committee's Note cannot be stretched to cover the circumstances of this case. First, it is difficult to imagine an injunction granted to one potential class member would harm other potential class members.  Separate actions by individual trainmen will not be dispositive of the claims of these Plaintiffs or adversely affect their interests.

Second, the Supreme Court has cautioned courts against extending Rule 23(b)(1)(B) or any subsection which removes the class members' opt-out opportunity.  *See Phillips Petro Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *In re Telectronics Pacing Sys., Inc.*, 221 F.3d at 881 (citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999)):

16

> From a due process point of view, the opt-out choice is of less concern when there is a definite fund or res from which plaintiffs will receive damages. When there is a true limited fund, the only question is how to divide up the pie. Where defendants have sufficient funds to compensate class members through individual litigation, however, . . . the choice to opt out becomes much more meaningful and due process demands that class members be afforded that right where possible.

Here, there is no limited fund, and it appears Defendants have sufficient resources to compensate individual Plaintiffs.

### *Rule 23(b)(2) Requirements*

To certify a class under Federal Civil Rule 23(b)(2), Plaintiffs must show "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The subdivision "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Rule 23(b)(2) Advisory Committee's Note; *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002); *Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 658 (6th Cir. 2006) ("the Supreme Court [*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994)] stated that there is at least a substantial possibility that in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out"). As stated above, the predominant relief sought by Plaintiffs is money damages. Accordingly, the Court finds the proposed class action does not fall within Rule 23(b)(2).

### *Rule 23(b)(3) Requirements*

To satisfy Rule 23(b)(3), Plaintiffs must demonstrate the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*

Predominance

Even if some common issue affects the class as a whole, certification is denied unless Plaintiffs satisfy the more "stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys.*, 75 F.3d at 1084.  The Sixth Circuit has previously stated that "[s]ubdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Id.*; *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion is far more demanding.").  As explained in *Rodney v. Northwest Airlines, Inc.*, 146 Fed. Appx. 783, 786 (6th Cir. 2005):

> Rule 23(b)(3)'s "predominance" inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997). In analyzing the predominance requirement, courts "take care to inquire into the substance and structure of the underlying claims without passing judgment on their merits." *Robinson v. Texas Automobile Dealers Assoc.*, 387 F.3d 416, 421 (5th Cir. 2004).  "Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) also requires us to consider how a trial on the merits would be conducted if a class were certified." *Bell Atlantic*, 339 F.3d at 302 (internal quotation omitted). Though not a determination on the merits, the Rule 23(b)(3) analysis helps "prevent [] the class from degenerating into a series of individual trials." *Id.* (internal quotation omitted).

18

Both sides extensively argued the issue of predominance through briefing and the class certification hearing. When the case is viewed in its totality, the Court finds many significant individual questions are at issue. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006). As Defendants point out, these questions include: (1) issues of injury (whether Plaintiffs suffer from asthma, emphysema, or COPD, as well as whether Plaintiffs suffer mental distress or a fear of cancer); (2) issues of causation (for example, showing any of the above injuries were caused or exacerbated by the diesel exhaust); (3) issues of defenses (whether claims are barred because of the statute of limitations or releases); (4) issues of comparative negligence; and (5) issues relating to claims based on FELA negligence, not LIA negligence *per se*. These issues will necessitate discussion of Plaintiffs' different medical history, family history, social history, risk factors, length of exposure, symptoms and treatment, and prior diesel claims or releases (Widemann Report, Doc. No. 220, Exs. 17, 22; Kelly Dep. 34-35, 41-42, 50-51).

While each of these individual issues alone may not preclude class certification under Rule 23(b)(3), when viewed together they not only predominate, but overwhelm the common questions Plaintiffs seek to certify. This seems to be exactly the type of case that could degenerate into individual trials, which Rule 23(b)(3) seeks to prevent. *Rodney*, 146 Fed. Appx. at 786.

Plaintiffs cite to *Sterling*, 855 F.2d at 1197, which held: "No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action." While there are cases, such as *Sterling*, in which bifurcating the trial would be appropriate, this is not such a case. The *Sterling* court faced individual damages issues, while the individual issues here encompass much more than damages. *See Jones*, 203 F.R.D. at 306 ("the individual issues of proximate cause predominate in this case. Each plaintiff's claim is dependent on his or her sensitivity to the products and the nature of his or her exposure and alleged

19

reaction."); *Snow v. Atofina Chem., Inc.*, No. 01-72648, 2006 WL 1008002, at *10 (E.D. Mich. March 31, 2006) ("each claim of personal injury will require individual proofs regarding: duration and level of exposure; the nature and extent of alleged injuries; causation, which will include an assessment of prior and current medical histories; and, damages. Therefore, this proposed class is unsuitable under either Rule 23(b)(3) or 23(c)(4)."). These individual issues pertain not only to the amount of damages, but also to causation, defenses, and negligence elements.

This case is also unlike *Olden v. LaFarge*, 383 F.3d 495 (6th Cir. 2004) which conditionally granted class certification for property owners damaged or injured by toxic pollutants which originated from a nearby cement facility. In that case, common issues included **both** negligence and causation for the class as a whole and request for a specific permanent injunction. *Id.* at 508. Moreover, this case is not a mass tort arising out of a single localized incident and site, but rather encompasses alleged harm over a period of time, at different locations and in varying manufactured and maintained engine cabs. The individual issues in this case were not present in that case.

As the court in *Sterling* itself recognized, "[i]n mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next." *Sterling*, 855 F.2d at 1197. Here, however, liability will not even be conclusively proven in the class certification portion of the trial. Plaintiffs attempt to split the causation analysis between the class portion and the individual portion of the trials.[7] In the class portion, Plaintiffs merely seek to establish that diesel exhaust causes harm generally, asking to reserve whether any actual injuries were caused by diesel fumes.

---

[7] Defendants also argue that class certification as proposed by Plaintiffs would violate the Seventh Amendment. "The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues. Thus, Constitution [sic] allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first . . ." *Castano*, 84 F.3d at 750. As class certification is denied, the Court need not reach this issue.

Plaintiffs admit that causation creates a "myriad of individual issues" (Hearing trans. pp. 9-10) and therefore seek to postpone inquiry into whether the pulmonary diseases allegedly suffered by Plaintiffs are related to the diesel exhaust (Hearing trans. pp. 51-52).  But isn't that a very basic and underlying purpose of this litigation?  Ignoring the individual claims does not efficiently or meaningfully advance, but rather complicate, this litigation.

Superiority

Even if Plaintiffs satisfied the predominance requirement, certification is still inappropriate because they fail to establish class certification as the superior method of adjudication in this case. The second requirement under 23(b)(3) is that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.  The class device must be the "best" way, not merely one way, to resolve claims.  *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d  Cir. 2001).  The court in *Rugambwa v. Betten Motor Sales*, 200 F.R.D. 358, 367 (W.D. Mich. 2001) explained:

> In determining whether certification of class action is superior to other available methods, Rule 23(b)(3) lists a variety of factors to be considered by the court: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation already commenced by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) any management difficulties likely to be encountered if a class action is certified.

Certification is inappropriate where each plaintiff's claim "will be highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries." *Steering Comm.*, 461 F.3d at 602.

The first factor weighs in Defendants' favor.  Plaintiffs state the class members would have no interest in individually controlling the prosecution because the questions to be certified only relate to liability, and because they would benefit from being represented by Plaintiffs' counsel; the individual issues would be handled separately.  The weight of this factor, however, is mitigated by

21

the fact that Plaintiffs would still be subjected to individual trials of a potentially complex nature.

Additionally, courts have found when potential class members bring individual actions, "[i]t is proper

to infer . . . that many potential class members prefer to maintain separate actions to pursue their

claims." *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003) (citing *Local Joint Exe. Bd.*

*of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1153 (9th Cir. 2001)).

Here, there are at least 73 currently pending diesel exposure lawsuits against Defendants, including

at least 25 in Ohio courts (Declaration of David A. Damico, Doc. No. 220, Tab B, ¶ 3), and from this

the Court infers that many potential class members prefer to "go it alone."

Although there are presently a relatively small number of cases, this number may dramatically

increase.  This makes the second factor weigh in Plaintiffs' favor.  The Court also finds the potential

class members are geographically dispersed, and there is some benefit in combining the cases in one

forum.  However, this benefit during the class portion is overshadowed by the difficulties presented

in the individual portion.  Even if Plaintiffs succeed in establishing diesel exhaust harm, Plaintiffs

would still need to travel to Ohio from around the country to prove individual causation.  *See In re*

*Ford Motor Co. Ignition Switch Prods. Liab. Lit.*, 194 F.R.D. 484, 496 (D.N.J. 2000).  This tends to

make litigation in Ohio of all claims undesirable.  Therefore, the third factor weighs in Defendants'

favor.

Furthermore, the fourth factor weighs in Defendants' favor as well because of the substantial

management difficulties which certification would present.  The individual trials would still be left

with the issues of whether the diesel fume **actually** caused harm to individual plaintiffs and to what

extent, which cannot be adjudicated as a class.  The burden upon Plaintiffs, counsel, and the Court

to conduct these trials would be exhaustive.  Each individual trial would require examination of

several witnesses -- the Plaintiff, the treating physician, and perhaps one or two experts.  *See In re*

22

*Ford*, 194 F.R.D. at 496.  Therefore, the Court finds that class certification is not the superior method of adjudication for these cases, and class certification is not appropriate under Rule 23(b)(3).

### 5.  The Application of Rule 23(c)(4)

Rule 23(c)(4) states:

> When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, . . .

Under this rule, the Court has the discretion to bifurcate portions of the trial, such as liability and damages, and limit certification to the liability portion. *Reeb*, 435 F.3d at 658; *Adams v. Federal Materials Co.*, No. 5:05-cv-90-R, 2006 WL 3772065, at *7 (W.D. Ky. Dec. 19, 2006) (listing cases with similar holdings).  However, there is some debate as to the applicability of Rule 23(c)(4)(A) when the predominance standard is not met as to the whole case, and the Sixth Circuit has not yet provided guidance.  A number of district courts in this Circuit, however, have held that Rule 23(c)(4) does not relieve Plaintiffs of their burden to show predominance under Rule 23(b)(3), and that "Rule 23(c)(4) may not be used to circumvent the predominance requirement of Rule 23(b)(3))."  *Snow*, 2003 WL 1008002, at *9; *Adams*, 2006 WL 3772065, at *7; *Rumpke v. Rumpke Container Serv., Inc.*, 205 F.R.D. 204, 207 (S.D. Ohio 2001); *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir. 1996); *cf. Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."); *Sterling*, 855 F.2d at 1197 ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.").

In *Snow*, plaintiffs requested the case "only be certified as to the common issues of liability under Rule 23(b)(3) and 23(c)(4), with individual issues of causation and damages to be litigated in 'follow-on' trials." *Snow*, 2006 WL 1008002, at *9.  The court denied certification, finding the need for individual proofs of duration and level of exposure, nature and extent of injury, causation based on medical history and damages distinguished the case from that of *Sterling*, where  certification and bifurcation were appropriate when the individual issue was that of damages. *Snow*, 2003 WL 1008002, at *10.  Because of the multiple individual issues in *Snow*, the court held the requirements of Rule 23(b)(3) were not met, and therefore bifurcation under Rule 23(c)(4) was not available.  To support the court's position that Rule 23(c)(4) is not to be used as an "end run" around Rule 23(b)(3)'s requirements, it cited to *Castano*, 84 F.3d at 745 n. 21:

> The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial . . . Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

The Court finds *Snow* analogous to this case.  As in *Snow*, the individual issues are not limited solely to damages, and significantly outweigh the common questions of fact and law.  The Court also agrees with the holdings in *Snow* and *Castano* to the extent they hold Rule 23(c)(4) should not be interpreted to eviscerate the class certification requirements of Rule 23(b)(3).  Plaintiffs "must still satisfy that the issues to be determined by class adjudication predominate over the claims as a whole, including the claims in the separate individual issue trials." *Adams*, 2006 WL 3772065, at *11.  In sum, Plaintiffs fail to satisfy Rule 23(b) requirements.

## CONCLUSION

During the course of this fiercely-contested litigation, Plaintiffs, in response to Defendants' arguments, have modified their class action theme from their original Complaints.  The scope has been narrowed in order to satisfy the Rule 23(a) requirements but, in the process, Plaintiffs still cannot clear the Rule 23(b) hurdles.  For example, in order to satisfy the Rule 23(a) commonality and typicality requirements, Plaintiffs abandon a class action determination of causation and damages as originally alleged.  However, this in turn defeats their attempt to satisfy the Rule 23(b) predominance and superiority requirements.  Also, while Plaintiffs emphasize the "cleaner" LIA claim, they don't abandon the more individualized FELA claim.  Even after the massaging, Plaintiffs still end up trying to fit a square peg into a round hole.  No matter how you slice or dice it, this case simply doesn't work as a class action.

IT IS SO ORDERED.

_____s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 28, 2007